UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAURICE JAMES SALEM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 8997 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| SCOTT A. KOZLOV, JEROME LARKIN, ) | |
| JOEL A. BRODSKY, JOHN DOE, AND ) | |
| THE ILLINOIS ATTORNEY ) | |
| REGISTRATION AND DISCIPLINARY ) | |
| COMMISSION, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Plaintiff Maurice James Salem, an attorney admitted to practice law in New York, but not in Illinois, brings this action against Defendants Illinois Attorney Registration and Disciplinary Commission (the "ARDC"), Scott Kozlov, an attorney with the ARDC, and Jerome Larkin, the Administrator of the ARDC (collectively the "ARDC Defendants"), as well as Joel Brodsky, a private attorney against whom Salem has litigated, alleging that Defendants conspired to unconstitutionally deprive him of his permission to appear *pro hac vice* in Illinois courts by "prohibit[ing] [him] from paying the required fee to appear in his last state court case on a *pro hac vice* basis, and depriving [him] of his license to practice law on a *pro hac vice* basis, without notice or a hearing." Doc. 21 ¶ 42. Salem also brings a claim for assault against Kozlov. Defendants filed motions to dismiss the federal law claims in Salem's Second Amended Complaint ("SAC") for failure to state a claim and to dismiss his assault claim for lack of subject matter jurisdiction [29, 32]. Brodsky also has filed a motion for sanctions [41]. Salem has failed to allege well-pleaded facts sufficient support a claim for relief on any of his federal law claims

and the Court declines to exercise supplemental jurisdiction over his assault claim, so the Court grants the motions to dismiss. But because the Court finds that Salem's actions do not rise to the level warranting sanctions at this stage, the Court denies the motion for sanctions.

## BACKGROUND[1]

Salem is an attorney, admitted to practice in New York but not admitted to practice in Illinois. He is domiciled in New York but has residences in both New York and Illinois; he has owned or rented a home in Illinois since at least 2004. Over the last decade Salem has appeared in numerous Illinois state court proceedings on a *pro hac vice* basis, appearing in five cases in Illinois since 2013.

The ARDC is the agency overseeing the registration and discipline of members of the Illinois bar and out-of-state attorneys who appear before Illinois courts. It also investigates allegations of unauthorized practice of law by individuals not holding an Illinois law license. Kozlov works as an ARDC attorney, and Larkin is the ARDC Administrator.

Brodsky is a private attorney who practices in Illinois, adversely to Salem in several matters. On November 17, 2014, Brodsky filed a motion in Illinois state court to terminate Salem's permission to appear *pro hac vice* in *Marayah Diagnostics, LLC v. Westfield Plaza*, 2012-CH-22853 (Ill. Cir. Ct.) ("*Marayah*"). The court denied Brodsky's motion, however, because he lacked standing to challenge Salem's appearance under Illinois Supreme Court Rule

---

[1] The facts in the background section are taken from the SAC, and documents incorporated by reference therein, and are presumed true for the purpose of resolving the motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). When the facts pleaded in the SAC are contradicted by the exhibits to the SAC, the exhibits control. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998). The Court may also take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

707. Rule 707 is the Illinois Supreme Court rule that regulates the permission of out-of-state attorneys to provide legal services in Illinois proceedings.

On July 17, 2015 Salem filed a statement ("Rule 707 Statement") with the ARDC as required by Illinois Supreme Court Rule 707(a) in support of his application to appear *pro hac vice* in *Prime Builders v. Allstate et al.*, Case No. 2015 L 7034 (Ill. Cir. Ct.) ("*Prime Builders*"). At or around this time he also attempted to pay the $250 fee per proceeding to the ARDC ("the *Prime Builders* Fee") as required by Supreme Court Rule 707(f) but he was unable to do so. Normally after a party has filed a Rule 707 Statement, their online ARDC account will indicate that they owe the $250 fee. After Salem filed the statement in *Prime Builders*, his online ARDC account showed a zero-dollar balance and would not accept any payment from him. This occurred because Kozlov reduced the account balance to zero to prevent Salem from paying the *Prime Builders* Fee and, Salem alleges, terminated his ability to appear *pro hac vice*, without notice or hearing. Salem states that Kozlov's action "depriv[ed] Salem of his license to practice law on a *pro hac vice* basis." Doc. 21 ¶ 3.

On September 9, 2015, Kozlov filed motions on behalf of the ARDC and Larkin to terminate Salem's permission to appear *pro hac vice* in four state court cases, including *Prime Builders* and *Marayah*, in which Salem was then appearing (the "Termination Motions").[2] Those courts granted all four motions after providing Salem an opportunity to respond and holding a hearing. Salem has not appealed any of the decisions in state court as far as this Court is aware. Salem alleges that the only truthful reason Defendants alleged in the Termination Motions in support of their argument that Salem engaged in the unlicensed practice of law was

---

[2]  Salem is adamant in the SAC that the filing of these motions "*is not, and it will not be, the subject matter of this action* because it did not deal with Defendants' July 17, 2015 act of depriving Salem of his license to practice law on a *pro hac vice* basis." Doc. 21 ¶ 4. The Court includes this information here because it is important to understanding the full context of Salem's claim despite his protestations to the contrary.

that Salem has a residence in Illinois. In contrast to this allegation, the Termination Motions include numerous other reasons to support the argument that he has engaged in the unlicensed practice of law, including "reporting his Illinois address as his registration address with New York, incorporating and operating a law firm in Illinois, and continuously practicing law in this State over an extended period of time." Doc. 21, Ex. B ¶ 21.

Salem alleges that the ARDC has previously investigated him for the unlicensed practice of law and, on April 15, 2013, "declar[ed] that Salem did not violate Rule 5.5 of the Illinois Rules of Professional Conduct."[3] Doc. 21 ¶ 36. The April 15, 2013 letter from the ARDC states that the ARDC concluded its review of the matter and decided not to pursue it further. Salem alleges that the ARDC did not have any new evidence that he violated Rule 5.5 between 2013 and July 17, 2015.[4] Salem alleges that the "only difference between the 2013 ARDC complaint" and the July 17, 2015 decision to prevent him from paying the *Prime Builders* Fee "is Brodsky." Doc. 21 ¶ 23.

Finally, on October 15, 2015, while Salem and Kozlov were attending a hearing in Cook County Circuit Court on one of the Termination Motions, Kozlov assaulted Salem by raising his hand up over Salem with the intent to strike Salem's arm after Salem refused to return a copy of a draft order to Kozlov.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-

---

[3] Rule 5.5 defines the unauthorized practice of law in Illinois, and violation of Rule 5.5 is a specific ground for termination of an attorney's *pro hac vice* status under Rule 707. Ill. Sup. Ct. R. 5.5, 707(i)(2).

[4] However, on February 5, 2014, Sharon Opryszek of the ARDC deposed Salem . The SAC does not state what the subject matter of this deposition was.

pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Under federal pleading rules, a plaintiff is not limited to nor bound by the legal characterizations of his claims contained in the complaint. A claim can survive as long as the facts alleged would support relief. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). However, once a motion to dismiss is filed, in response plaintiff must establish the legal basis for his claims and provide a sufficient legal argument in support of them. *Kirksey*, 168 F.3d at 1041–42; *Lekas v. Briley*, 405 F.3d 602, 614–15 (7th Cir. 2005). Failure to do so results in dismissal of the complaint. *Id.*

**ANALYSIS**

Salem's allegations are, at their core, an attempt to get a second bite at the apple. Dissatisfied with the termination of his authorization to appear *pro hac vice* in four Illinois state court matters, Salem alleges that the he did not receive due process in one of those matters—*Prime Builders*—and that he, as a class of one, was discriminated against in violation of the Fourteenth Amendment, Privileges and Immunities Clause, and Dormant Commerce Clause of the United States Constitution. In an apparent attempt to circumvent *res judicata* effects of the termination decisions, Salem now targets only Kozlov and the ARDC's refusal to accept his payments of the *Prime Builders* Fee required by Rule 707. For the reasons discussed below he fails to state a claim, and the Court declines to exercise jurisdiction over his remaining state court claim.

**I.      42 U.S.C. § 1983 – Procedural Due Process Claim (Count I)**

Salem claims that Defendants "deprived [him] of his license[5] to practice law on a *pro hac vice* basis" without notice or hearing when they took steps to prevent him from paying the *Prime Builders* Fee required under Illinois Supreme Court Rule 707. Doc. 21 ¶ 52. To properly plead a procedural due process claim[6] under 42 U.S.C. § 1983, a plaintiff must allege that he has a protected interest, was deprived of that interest, and that deprivation was without due process. *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003) (citing *Morrissey v. Brewer*, 408 U.S.

---

[5]    The Court notes that there is no such thing as a "license" to practice law *pro hac vice* in Illinois. Permission to appear *pro hac vice*, by its very nature, is determined on a case-by-case basis, and is not an on-going "license." The Court assumes for purposes of deciding this motion that Salem instead meant "permission," however, it is likely that Salem does not fully grasp the distinction between a license to practice law in a jurisdiction and the permission to appear in a specific case on a *pro hac vice* basis.

[6]    Salem styles his claim as a violation of the Fifth Amendment Due Process Clause, however, the Fifth Amendment Due Process Clause does not apply to state actors; the Fourteenth Amendment does. Therefore the Court will review this claim as though Salem brought it under the Fourteenth Amendment.

471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). Salem does not clearly allege of what protected interest he was deprived and when that deprivation took place. However, the Court construes the SAC in the manner it views most consistent with Salem's asserted causes of action, which only logically points to a procedural due process claim that he was deprived of the right to appear on a *pro hac vice* basis at the time the ARDC prevented him from paying the *Prime Builders* Fee.

Although four courts terminated Salem's *pro hac vice* permissions, the SAC states that the constitutional violations arise only from the ARDC Defendants' refusal to accept the *Prime Builders* Fee. In that case Salem filed the required Rule 707 Statement with the ARDC on July 17, 2015 and attempted to pay the $250 fee at that time. He was unable to do so because the ARDC prohibited him from paying the *Prime Builders* Fee, resulting in his inability to appear on a *pro hac vice* basis in that case. Salem alleges that the decision to prevent him from paying the *Prime Builders* Fee was done without notice or hearing and therefore he was deprived of his due process rights.

To plead a procedural due process claim, a plaintiff must first establish that the deprived interest is protected by the due process clause. *Omosegbon*, 335 F.3d at 674. Salem alleges that he was deprived of the permission to appear *pro hac vice* in *Prime Builders*. But he does not allege that this permission is a protected interest nor does he cite any case law in his opposition brief in support of that conclusion, and this deficiency means he has failed to adequately plead his due process claim. *See Leis v. Flynt*, 439 U.S. 438, 443–44, 99 S. Ct. 698, 58 L. Ed. 2d 717 (1979) (dismissing a due process challenge to a denial of application to appear *pro hac vice* because *pro hac vice* status is not a cognizable property interest in Ohio). Therefore, the Court dismisses Salem's due process claim.

## II. 42 U.S.C. § 1983 – Class-of-One Equal Protection Claim (Count II)

In Count II, Salem alleges that the ARDC Defendants singled him out for "arbitrary and irrational purposes," Doc. 36 ¶ 19, by preventing him from paying the *Prime Builders* Fee, which violated his right, as a class of one, to equal protection under the law. In the Seventh Circuit, it is clear that a plaintiff pursuing a class-of-one claim must plead that a state actor discriminated against him with no rational basis. *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015). A common, though not required, method of making such a showing is to identify some comparator—a similarly situated person—who was treated differently. *Id*. In the absence of pleading the existence of a comparator, a plaintiff may avoid dismissal by pleading "that the state actor lacked a rational basis for singling them out for intentionally discriminatory treatment." *Id.* at 1121. However, a complaint does not survive by merely alleging an improper motive; at the pleading stage "[a]ll it takes to defeat [a class-of-one] claim is a conceivable rational basis for the difference in treatment." *Id*. (citation omitted). And plaintiffs may "plead themselves out of court if their complaint reveals a potential rational basis for the actions of local officials." *Id*.

Salem has not alleged any similarly situated group or individual to support his class-of-one claim. Additionally, the SAC, its exhibits, and Illinois circuit court opinions referenced in the SAC—of which the Court may take judicial notice, *Id.* at 1117—reveal a rational basis for the ARDC Defendants' decision to seek the termination of Salem's *pro hac vice* permissions. In the SAC, Salem states that he has appeared in five cases in Illinois since 2013. He also notes that in 2006, the Character and Fitness Committee of the Illinois Supreme Court disapproved of his use of the *pro hac vice* procedure in Illinois. Additionally, in his response to the ARDC's Motion to Terminate his appearance in *Marayah*, which Salem attached to the SAC and therefore incorporated into his pleadings, Salem admitted to using an Illinois address on his business

8

letterhead, appearing in 17 cases in Illinois between 2004 and 2012, doing legal work from his home in Illinois, and registering his law firm in Illinois. All of these facts, which are pleaded by Salem, would provide the ARDC Defendants with a rational basis to conclude that Salem has established a systematic and continuous presence in Illinois for the practice of law in violation of Illinois Supreme Court Rule 5.5 and to seek termination of his *pro hac vice* permission.

Additionally, the state courts deciding the four Termination Motions accepted the ARDC Defendants' reasoning and granted the Termination Motions. Such findings by the state courts are enough to establish that the ARDC Defendants' actions had a legitimate basis. *See Id.* at 1123 (subsequent municipal court proceedings upholding one of four challenged citations confirmed the legitimate basis for the challenged act by the state actor). Because Salem's pleadings revealed this basis, he has effectively pleaded himself out of court. *See D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (affirming dismissal of class-of-one claim where complaint revealed a rational basis); *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 547–48 (7th Cir. 2008) (same).

Despite revealing, through his own pleadings, a rational basis for the ARDC Defendants actions, Salem argues that the reasons cited by the ARDC in support of their Termination Motions are "blatantly false" and, therefore, irrational and "based on ill will and malice." Doc. 21 ¶ 33. The Court need not address the reasons that Salem attacks because other allegations included or incorporated by reference in the SAC are sufficient to find a rational basis for the ARDC's action. Furthermore, even if the ARDC Defendants were motived in part by some animus towards Salem, his claim still fails because the challenged action has a rational basis. *See Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014) ("If we can

come up with a rational basis for the challenged action, that will be the end of the matter—animus or no.").

Thus, because the SAC reveals a potential rational basis for the ARDC Defendants' decision to target Salem's *pro hac vice* status, Salem's class-of-one claim fails, and the Court dismisses the claim.

### III.     42 U.S.C. § 1985(3) – Conspiracy to Deprive Plaintiff of Civil Rights (Count III)

Salem alleges that Brodsky, a private citizen, conspired with the ARDC Defendants to deprive Salem of his due process and equal protection rights. To prevail on a conspiracy claim under § 1985(3) a plaintiff must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). Additionally, the plaintiff must show that the defendants acted out of some "class-based, invidiously discriminatory animus" and that the rights with which defendants have interfered are protected against private encroachment. *Id.*

Even if Salem had alleged conspiracy, his § 1985 claim fails because he has not alleged an underlying violation of his rights resulting from the conspiracy. Section 1985(3) creates "no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S. Ct. 2345, 60 L. Ed. 2d 957 (1979). Salem brings his § 1985(3) claim in an attempt to seek redress against Brodsky for the violation of his due process and equal protection rights. Because he has not adequately pleaded these claims, for the reasons discussed more fully above, the § 1985(3) claim also must

fail.[7] *See Bublitz v. Cottey*, 327 F.3d 485, 488 (7th Cir. 2003) (summary disposition of plaintiff's § 1983 claim was sufficient to dispose of his § 1985 claim—failure to establish a deprivation of a constitutional right meant plaintiff could not prove constitutional violation under § 1985); *Puppala v. Will Cty. Cmty. Health Ctr.*, No. 09 CV 6804, 2010 WL 3893847, at *4 (N.D. Ill. Sept. 30, 2010) ("Lacking a viable constitutional claim, Puppala's possible § 1985(3) claim must be dismissed."). Furthermore, even if Salem had pleaded a class-of-one claim, such a claim cannot sustain a § 1985(3) claim. *See Thorncreek Apartments I, LLC v. Vill. of Park Forest*, No. 08 C 1225, 2015 WL 2444498, at *2 (N.D. Ill. May 20, 2015) ("[S]ettled law further holds that the equal protection violation necessary to predicate a § 1985(3) claim must be a race-based or other class-based violation, not a class-of-one violation.").

## IV. Privileges and Immunities and Dormant Commerce Clause Claims (Counts IV & V)

Salem alleges the ARDC Defendants prevented him from paying the *Prime Builders* Fee because he is a citizen of New York who owns a residence in Illinois, constituting economic protectionism in violation of the Privileges and Immunities Clause and Dormant Commerce Clause of the United States Constitution. Individuals may bring Dormant Commerce Clause claims to invalidate overreaching provisions of state regulation of commerce. *Alliant Energy Corp. v. Bie*, 330 F.3d 904, 911 (7th Cir. 2003). "If a party seeking to invalidate a statute cannot show any burden on interstate commerce, then the Dormant Commerce Clause is not implicated and the statute will not be invalidated." *Id.*

---

[7] Brodsky also argues that these claims are barred because Illinois Supreme Court Rule 775 provides immunity from civil liability arising out of any alleged communications with the ARDC regarding concerns related to the unauthorized practice of law in Illinois. Ill. Sup. Ct. R. 775. While this rule very well may immunize Brodsky against state law civil claims, the Court is unaware of any authority which would allow a state supreme court rule to immunize a defendant against liability for federal civil rights violations. However, because this claim is dismissed on other grounds, the Court declines to decide whether the immunity applies here.

Salem claims that the ARDC has a "policy of prohibiting an out-of-state attorney from practicing law on a *pro hac vice* basis in Illinois, on the basis of having a residence in Illinois," despite the fact that there is no statute or rule which authorizes the ARDC to seek termination on this basis. Doc. 21 ¶ 31. Salem does allege that "the ARDC told the state court judges [adjudicating the motions to terminate Salem's *pro hac vice* permission] that having a permanent residence in Illinois and appearing on a state case on a *pro hac vice* basis violates Rule 5.5." Doc. 21 ¶ 41. But Salem also attached the ARDC's Verified Motion to Terminate Permission to Practice Law in This Matter Pursuant to Supreme Court Rule 707 in *Marayah* to the SAC. Doc. 21, Ex. B. In that motion, the ARDC argued that Salem's permission should be terminated because he violated Rule 5.5(b)(1) by "maintaining a residential address in Illinois, reporting his Illinois address as his registration address with New York, incorporating and operating a law firm in Illinois, and continuously practicing law in this State over an extended period of time." Doc. 21, Ex. B ¶ 21. At no point did the ARDC argue that ownership of residential property in Illinois alone was grounds to terminate Salem's permission. Furthermore, the Cook County circuit court judge who ultimately terminated Salem's permission in *Marayah* did not rely upon the fact that he has a residence in Illinois in rendering his decision. Judge Jacobius held that:

> [T]here is ample support in the instant suit for finding that Salem has established a systematic and continuous practice of law and held himself out as an attorney in Illinois in violation of Rule 5.5. Salem has represented to others that he has a "business address" in the state of Illinois since 2004 and this same address is the only address listed in connection with "Salem Law Office" on communication to clients in Illinois.

*Marayah Diagnostic, LLC v. Westerfield Plaza, LLC*, 2012 CH 22853, at 12 (Ill. Cir. Ct. Dec. 14, 2015) (Doc. 37, Ex. 1).[8] Salem's allegation that the ARDC targeted him because he owned a

---

[8] The Court takes judicial notice of this public record without converting the motion to one for summary judgment. *Gen. Elec. Capital Corp.*, 128 F.3d at 1080–81.

home in Illinois is contradicted by the documents attached to the SAC; therefore, the Court is not required to accept the allegation as true. *See N. Ind. Gun & Outdoor Shows*, 163 F.3d at 454 (exhibits that contradict the allegations of the complaint control); *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment."). Thus the Court finds no plausible allegation that the ARDC acted against Salem solely because he was a New York resident who owned a residence in Illinois.

Without such facts, Salem has failed to plead a policy to exclude out-of-state attorneys who own residences in Illinois from appearing *pro hac vice*; therefore he has not alleged anything this Court could invalidate even if it did burden interstate commerce and his Dormant Commerce Clause claim fails.

The Privileges and Immunities Clause claim fails for similar reasons. The Privileges and Immunities clause bars states from discriminating against citizens of another state. *Burgess v. Ryan*, 996 F.2d 180, 185 (7th Cir. 1993). Even if Salem did plausibly allege that his permission was terminated simply because he owns a residence in Illinois, Salem has not alleged any facts that show that Illinois citizens who are admitted to practice law in some other state but not Illinois and own residences in Illinois would be treated any differently than him when seeking to appear *pro hac vice*. Showing such discrimination in favor of citizens of the defendant's state is a requirement of a Privileges and Immunities claim. *Chavez v. Ill. State Police*, 251 F.3d 612, 649 (7th Cir. 2001) (affirming dismissal of Privileges and Immunities claim where plaintiffs did not allege that the state police discriminated against them because they are not Illinois residents). Because Salem has failed to make any such allegation, supported by well-pleaded facts, this claim fails.

V. **Assault Claim**

Salem also brings a common law tort claim of assault against Kozlov, alleging the Court has supplemental jurisdiction over the claim pursuant to 28 U.S.C. § 1367.[9] The Court dismisses Salem's federal claims, over which it has original jurisdiction, so the Court declines to exercise supplemental jurisdiction over Salem's state law assault claim and dismisses it. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). Even if the Court did not dismiss all of Salem's federal claims, it would still decline to exercise supplemental jurisdiction. For supplemental jurisdiction to be found, both the state and federal claims must derive from a "common nucleus of operative facts." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Salem's federal claims are centered around the decision by the ARDC Defendants to prevent Salem from paying the *Prime Builders* Fee in July 2015, but the alleged assault took place in October 2015. And even though the alleged assault occurred in a courtroom where Salem and Kozlov were arguing a motion to terminate Salem's *pro hac vice* status in a state court proceeding, this fact is not relevant to Salem's assault claim. Therefore, the assault claim does not arise from a common nucleus of operative facts and is dismissed.

VI. **Brodsky's Motion for Sanctions**

As a final matter, the Court addresses Brodsky's motion for sanctions [41]. After filing his motion to dismiss, but before the Court ruled on that motion, Brodsky filed a motion pursuant to Rule 11 asking the Court to sanction Salem. The Seventh Circuit has cautioned district courts

---

[9] Salem does not plead that diversity jurisdiction exists, and the Court cannot proceed on the assumption that it does. *See Downs v. IndyMac Mortg. Servs., FSB*, 560 F. App'x 589, 591 (7th Cir. 2014) (refusing to find diversity jurisdiction when it was not pleaded in the complaint).

to impose sanctions sparingly, *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003), and only when an attorney's conduct is frivolous, *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1122 (7th Cir. 1992). *See Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 504 (7th Cir. 2000); *United States ex rel. Turner v. Michaelis Jackson & Assocs.*, No. 03-cv-4219-JPG, 2011 WL 13510, at *10 (S.D. Ill. Jan. 4, 2011). "An attorney takes a frivolous position if he fails to make a reasonable inquiry into facts . . . or takes a position unwarranted by existing law." *Turner*, 2011 WL 13510, at *10 (quoting *Rush*, 966 F.2d at 1122 n.67). In determining whether an attorney's conduct was reasonable, courts are to apply an objective standard, taking into account the circumstances of the case. *Id.* (citing *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir.1994)).

Although the Court finds that Salem has not adequately pleaded his claims, the Court does not find that Salem's conduct warrants the imposition of sanctions. This is especially so given the early stage of litigation. *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 857 F. Supp. 1241, 1244 n.4 (N.D. Ill. 1994) ("The proper moment for determining the adequacy of B. Sanfield's factual basis for filing the amended complaint will be the summary judgment stage[.]"); *see also United States ex rel. Ivanich v. Bhatt*, No. 13 C 4241, 2015 WL 249413, at *3 (N.D. Ill. Jan. 20, 2015) (granting motion to dismiss claim, but denying motion for sanctions based in part on "early stage of proceedings"). As discussed above, the Court has taken notice of several documents that contradict Salem's pleaded facts and appear to indicate that he may have included allegations that are not well-grounded in fact; however, the Court still finds that sanctions are not appropriate at this early stage and denies Brodsky's motion for sanctions. If Salem elects to re-file his complaint and persists in presenting potentially spurious allegations

15

the Court will entertain a renewed motion for sanctions at that time and may hold an evidentiary hearing.[10]

## CONCLUSION

For the foregoing reasons, the Court grants the ARDC Defendants' motion to dismiss [29] and Brodsky's motion to dismiss [32]. The Court dismisses the Second Amended Complaint without prejudice. Additionally, the Court denies Brodsky's motion for sanctions [41].

Dated: August 8, 2016

                                            SARA L. ELLIS
                                            United States District Judge

---

[10] The Court notes that other courts have called into question the veracity and characterization of Salem's allegations in related matters. In *Marayah Diagnostic, LLC v. Westerfield Plaza, LLC*, for example, Judge Jacobius noted "Salem repeatedly claims in his Response that Judge Martin's previous ruling on Brodsky's similar Motion to Strike Salem's appearance in the instant suit made factual and legal findings in favor of Salem . . . Nothing in the record supports this assertion." 2012 CH 22853, at 15 (Ill. Cir. Ct. Dec. 14, 2015). There are numerous examples of such mischaracterizations and misrepresentations in the record of this case and others on the part of Salem. The Count considers Salem to be on notice that such behavior will not be tolerated in the future.